SCOTT K. WILSON, Federal Public Defender (#7347)
EMILY A. STIRBA, Assistant Federal Public Defender (#17112)
OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ODIN MEACHAM,<br><br>  Defendant. | **MOTION TO DISMISS COUNTS FIVE, SIX, AND SEVEN OF THE INDICTMENT (§1752(a) COUNTS)**<br><br>Case No. 1:23-cr-00287<br><br>Hon. John D. Bates |

Odin Meacham, through undersigned counsel, and pursuant to Federal Rule pursuant to Rule of Criminal Procedure 12(b)(3)(B)(v), hereby requests the Court to dismiss Counts 5, 6, and 7 of the Indictment, all of which charge him with offenses under 18 U.S.C. § 1752(a).

1

Mr. Meacham acknowledges that his arguments are identical to those that have been litigated and rejected by this Court and others in this District.[1] Mr. Meacham nonetheless adopts these arguments in his case and preserves his position for the record.

## I.  INTRODUCTION

Mr. Meacham is charged by indictment with, *inter alia*, entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1) (Count Five), disorderly and disruptive conduct in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(2) (Count Six), and engaging in physical violence in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(4) (Count Seven).[2] The charges against Mr. Meacham arise out of events that took place at the United States Capitol on January 6, 2021.

Mr. Meacham moves this Honorable Court to dismiss Counts Five, Six, and Seven for the reasons set forth below.

## II.  STANDARDS OF REVIEW

### A. Motion to Dismiss

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Rule 12 provides

---

[1] *See, e.g.*, *United States v. McHugh*, 583 F.Supp.3d 1 (D.D.C. 2022) (JDB); *United States v. Sheppard*, No. 21-203 (JDB), 2022 WL 17978837 (D.D.C. Dec. 28, 2022); *United States v. Bozell*, No. 21-216 (JDB), 2022 WL 474144 (D.D.C. Feb. 16, 2022); *United States v. Nordean*, 579 F.Supp.3d 28 (D.D.C. 2021) (TJK); *United States v. Griffin*, 549 F.Supp 3d 49 (D.D.C. July 2, 2021) (TNM); *United States v. Caldwell*, No. 21-cr-28 (APM), ECF No. 415 (D.D.C. Sept. 14, 2021).

[2] All three counts also include a weapons enhancement under 18 U.S.C. § 1752 (b)(1)(A).

that a defendant may move to dismiss the indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007).  Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

### B. Statutory Interpretation

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

### III. THE COURT SHOULD DISMISS COUNTS FIVE, SIX, AND SEVEN.

The three charges under § 1752(a) concern certain conduct related to statutorily defined "restricted building or grounds." 18 U.S.C. § 1752(c) provides the following definition:

1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

   A) of the White House or its grounds, or the Vice President's official residence or its grounds;

   B) **of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or**

   C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

*Id.* § 1752(c)(1)(A)-(C) (emphasis added).

The United States Capitol and its grounds are not specifically included in the definition set forth above. Rather, the government alleges that the Capitol was a "restricted building and grounds" on January 6th because it was a "building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting." 18 U.S.C. § 1752(c)(1)(B). The "other person," as set forth in the Indictment, was then-Vice President Michael Pence. Accordingly, Mr. Meacham did not violate §1752 unless then-Vice President Pence was 1) "temporarily visiting" the specific area that Mr. Meacham traversed; and 2) the Secret Service designated that area as a restricted zone. The government cannot establish either element.

**A. Vice President Pence was not "Temporarily Visiting" the Capitol**

4

Then-Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia. Vice President Pence lived and worked in D.C. at his official residence, and actually worked at the Capitol Building and grounds – it was his place of employment. Vice President Pence had a permanent office "within the United States Capitol and its grounds," in his capacity as President of the Senate. On January 6th, Vice President Pence *was* working – he was presiding in the Senate chamber to count the electoral votes. *See* 3 U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer*.") (emphasis added).

A person does not "temporarily visit" his or her regular workplace. Past cases support this plain, common-sense reading of the statute, as they involve conduct in or near areas where the President and Vice President were clearly "temporarily visiting." *See United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *United State v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (unpublished) (defendant pushed his way through a restricted area where then-Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by Secret Service agents); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d. 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 at protest during then-Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice

President traveling outside of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of §1752(c)(1)(B). But Vice President Pence was not traveling to a speaking event or political rally on January 6th. He was performing a duty of his office in a building where he had a permanent office. Based on the plain language of 18 U.S.C. § 1752, he was not "temporarily visiting" the Capitol building and §1752 does not apply as charged.

### B. The Secret Service did not "Restrict" the Capitol or its Grounds on January 6th

The legislative history of 18 U.S.C. § 1752 and the statutory authorization of 18 U.S.C. § 3056[3] make it clear that only the United States Secret Service ("Secret Service") can restrict areas for temporary visits by the President or Vice President. A particular place does not become restricted just because the Vice President enters it; rather, the Secret Service, the agency in charge of protecting the Vice President, must create the temporary restricted zone to facilitate its duty to protect. Indeed, the Government has specifically argued that it is the "Secret Service" that "exercise[s] its discretion to determine the scope of the restricted area necessary to protect" a designated person. *United States v. Jabr*, No. 18-105 (PLF), ECF #26 at page 9. The Government does not allege that any of the barriers that Mr. Meacham allegedly crossed were specifically erected for the Vice-President's visit at the direction of the Secret Service. On January 6, 2021, the restrictions placed on the

---

[3] This statute authorizes the Secret Service to protect high-ranking officials, including the Vice President.

Capitol were created by the Capitol Police, not the Secret Service.[4] As such, a necessary factual predicate for an offense under 18 U.S.C. § 1752 is lacking, and Counts Five, Six, and Seven must be dismissed for failure to state a claim.

## CONCLUSION

For the reasons above, Mr. Meacham respectfully asks this Court to grant his motion to dismiss.

Respectfully submitted,

_____/s/_____
EMILY STIRBA
Assistant Federal Public Defender
46 West Broadway Ste. 110
Salt Lake City, UT 84101

---

[4] Additional legislative history and language also confirm that the "posted, cordoned off, or otherwise restrict area[s]" must be created by the Secret Service to trigger the statute. As originally passed in 1970, the statute, 84 Stat. 1891, authorized the Treasury Department, which included the Secret Service at that time, to prescribe regulations for restricting grounds where the President and other protected leaders would visit. *See* 18 U.S.C. § 1752(d)(2); 84 Stat. 1891. Accordingly, the Treasury Department implemented numerous regulations, including requirements that the Secret Service designate certain "temporary residences" and "temporary offices" of their protectees and provide "notice to prospective visitors." 31 C.F.R. § 408.2(c). In 2006, Congress, likely because the Secret Service was reassigned to the Department of Homeland Security, repealed subsection (d) of §1752, which authorized the Treasury Department to promulgate regulations. *See* Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 252 (March 9, 2006). Nonetheless, the clear legislative intent behind §1752 from the date of its enactment was to provide the Secret Service with authorization to create temporary protected zones to facilitate its role in protecting the President and other protectees.

7

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of January, 2024, a copy of the foregoing **Motion to Dismiss Counts Five, Six, and Seven of the Indictment (§1752(a) Counts)** was filed with the court via Electronic Case Filing and a were provided to the following parties via email:

> Madison Mumma
> Trial Attorney
> Public Integrity Section Criminal Division
> U.S. Department of Justice
> madison.mumma@usdoj.gov

> /s/ Don Berrett
> Paralegal
> Office of the Federal Public Defender
> District of Utah