**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CASE NO. 23-cr-287 (JDB)** |
| v. | : | |
| | : | |
| ODIN MEACHAM, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence to be presented at trial.

As described below, the government will introduce a variety of evidence including, but not limited to, video evidence and testimony from law enforcement witnesses.

**I.    The January 6th Capitol Riot and The Defendant's Actions**

*General Background on the Events of January 6th*

On January 6, 2021, thousands of people descended on the U.S. Capitol and interrupted the joint session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. The government's evidence will briefly set the stage for the joint session and the riot in which the defendant participated, and then focus on the defendant's criminal conduct and intent that day.

The U.S. Capitol is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

On January 6, 2021, the Capitol building and grounds were closed to the public and accessible by only those with credentialed access or their guests. Specifically, the building and grounds were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

On January 6, 2021, there were security barriers around the exterior plaza of the U.S. Capitol. On the West Front of the Capitol, there were additional temporary barriers due to preparations and ongoing construction for the Inauguration scheduled for January 20, 2021, including green snow fencing and signs stating, "Area Closed By order of the United States Capitol Police Board."

On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election. The joint session began at approximately 1:00 p.m. Shortly thereafter, at approximately 1:15 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

By shortly after 1:00 p.m., the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

At approximately 2:15 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were suspended.

The Senate and House resumed meeting at approximately 8:06 p.m. and 9:02 p.m., respectively. Congress's joint session continued until approximately 3:44 a.m. on January 7, 2021, when it completed the certification of the Electoral College vote.

### Officers from the United States Capitol Police and Washington, D.C. Metropolitan Police Department

On January 6, 2021, USCP officers on the U.S. Capitol Grounds and in the U.S. Capitol building were engaged in their official duties as officers or employees of the United States or of any agency in any branch of the United States Government, as those terms are used in Title 18, United States Code, Section 1114.

On January 6, 2021, officers from the Washington, D.C., Metropolitan Police Department ("MPD") on the U.S. Capitol Grounds and in the U.S. Capitol building, were assisting officers from the USCP who were engaged in their official duties as officers or employees of the United States or of any agency in any branch of the United States Government, as those terms are used in Title 18, United States Code, Section 1114.

### *The Civil Disorder at the Capitol on January 6, 2021*

As a result of the civil disorder in Washington, D.C. on January 6, 2021, the United States Secret Service, who had multiple protectees inside the Capitol at the time, and the United States Capitol Police were forced to change their normal course of business and deploy additional personnel.

Due to the civil disorder in Washington, D.C. on January 6, 2021, Safeway, a grocery store chain, was forced to close its stores in the District of Columbia earlier than planned. As a result, Safeway reported lower sales on January 6, 2021, both as projected and compared to the same date in prior years. Additionally, Safeway delivery shipments from Pennsylvania to the District of Columbia were unable to be completed on January 6, 2021.

### *The Defendant's Actions on January 6th*

The defendant, Odin Meacham, was a violent participant in the breach of the Capitol on January 6th. On January 6th itself, the defendant was involved in numerous pivotal moments that allowed rioters to overtake police lines, breach the building, and halt the election's certification. The defendant also engaged in multiple assaults against the law enforcement personnel defending the Capitol.

The defendant is a resident of Myton, Utah and on or about January 5, 2021, drove over 30 hours and 2,000 miles with his nephew from Utah to Washington, D.C. According to the defendant, the purpose of his trip to Washington, D.C., was to "help" former President Trump. The defendant believed that going to the United States Capitol building "would make some sort of difference" because he knew that on January 6, 2021, Congress would be certifying the 2020 presidential election.

On the morning of January 6, 2021, the defendant and his nephew went to see the former President speak at the "Stop the Steal" rally. After the rally, the defendant walked to the U.S. Capitol Building with his nephew and other rioters. When he arrived on the Capitol grounds, the defendant saw metal bike racks positioned to keep people away from the Capitol building. The defendant then walked around the bike racks to the West Plaza of the U.S. Capitol Building. There, his progress was halted by another line of bike racks held in place by a line of federal officers. At approximately 2:00 p.m., significant sections of the police line, largely maintained with metal bike racks, were breaking as the rioters in the crowd swarmed and overwhelmed the officers.

The defendant witnessed a fight over the bike racks between the officers and the other rioters. Growing angry, he approached the officers. At 2:09 p.m., the defendant emerged from the crowd, holding a large wooden pole, and attempted to pull a bike rack away from the officers.



*MPD Sergeant Mastony BWC*

Several seconds later, the defendant rushed towards several officers and struck one United

States Capitol Police (USCP) Officer on the upper body with the large wooden pole. The pole was a dangerous weapon capable of causing serious bodily injury and the defendant used it in that manner.



*Open-Source Photograph*



*MPD Captain Augustine BWC*



*Still Shot from Open-Source Video*



*MPD Captain Augustine BWC*

    At approximately 2:14 p.m., the defendant picked up a black metal pole from the ground.

The image below shows the defendant stooping to pick up the black metal pole.



*MPD Sergeant Peake BWC*

Approximately thirty seconds later, the defendant threw the black pole at a D.C. Metropolitan Police Department (MPD) officer, hitting that officer on his left hand. The images below show the defendant throwing the black metal pole at the MPD officer, as well as the pole striking the officer in the hand. The pole was a dangerous weapon capable of causing serious bodily injury and the defendant used it in that manner.



*Still Shot from Open-Source Video*



*Still Shot from Open-Source Video*



*MPD Sergeant Kimball BWC*



*MPD Sergeant Kimball BWC*

Seconds after throwing the metal pole at the officer, the defendant pointed and shouted at the same officer, taunting the officer.



*Still Shot from Open-Source Video*

At approximately 2:16 p.m., the defendant again emerged from the crowd and approached another MPD officer. The defendant shouted, "lean in!" multiple times while simultaneously signaling towards the crowd with his right hand in an apparent effort to galvanize the crowd to approach and overwhelm the officers. The defendant then grabbed and attempted to take possession of an MPD officer's baton, as depicted in the images below.



*MPD Officer Leasure BWC*



*MPD Officer Leasure BWC*



*MPD Officer Leasure BWC*



*MPD Officer Leasure BWC*

After grabbing the MPD officer's baton, the defendant remained on Capitol grounds and continued to verbally harass law enforcement officers. Among other things, the defendant shouted at MPD Officer Wilson: "you fucking pieces of shit," "you fucking scumbag pieces of shit," "you are protecting criminals," and "are you scared motherfucker."

## II.    Stipulations

In an effort to expedite the presentation of evidence, the government has proposed the below referenced stipulations. At this time, the defense has indicated that they do not anticipate agreeing to any stipulations. However, the parties continue to have discussions on the topic.

1. To facts regarding the Capitol Building and Grounds;

2. To facts regarding the Certification of the Electoral College Vote that took place on January 6, 2021;

3. That the events on the Capitol Grounds and in the Capitol Building on January 6,

2021 constituted a Civil Disorder;

4. That the Civil Disorder on January 6, 2023 obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in Commerce;

5. That the Civil Disorder adversely affected a "federally protected function";

6. That officers from the U.S. Capitol Police were engaged in their official duties, and officers from the Metropolitan Police Department responded to assist them;

7. To the defendant's identification and presence on the Capitol Grounds and in the Capitol Building;

8. To the transcripts of two government witnesses who have previously testified in trials regarding the breach of the United States Capitol, as evidence in this case; and

9. To the admissibility and authenticity of the USCP CCTV, CSPAN, and Body Worn Camera video;

10. To the authenticity of government exhibits, including open-source video footage and photographs;

## III.   <u>Government Presentation of Evidence</u>

The government anticipates offering video clips from the United States Capitol Police and Metropolitan Police Department, as well as from sources other than USCP or BWC from MPD officers. Some of these other sources include reporters who were present in the Capitol that day, the defendant's fellow rioters, or other members of the crowd. Many of the videos were obtained through open-source means and are publicly available. For any such videos, the government will establish authenticity by asking the Court to compare it with other, authenticated exhibits: in particular, USCP or BWC footage. Fed. R. Evid. 901(3). Police footage will confirm that such videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and depicting events and sounds that were not captured by the USCP or BWC systems. In addition, the distinctive features of the Capitol building and of the other individuals in the

footage will help authenticate the videos. *Id*. at 901(4).

## IV.   **The Charges**

The government has charged the defendant, Odin Meacham, with eight offenses relating to his participation in the riot that took place during Congress's joint session at the United States Capitol on January 6, 2021, to certify the Electoral College vote for President.

1. Civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One);

2. Assaulting, resisting, and impeding certain officers, using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b)(1) (Count Two);

3. Assaulting, resisting, and impeding certain officers, using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b)(1) (Count Three);

4. Assaulting, resisting, and impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count Four);

5. Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count Five);

6. Disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count Six);

7. Engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count Seven); and an

8. Act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

The defendant has pleaded not guilty to all charges.

## V.   Elements of the Crimes Alleged

### *Count One: 18 U.S.C. § 231(a)(3) – Obstructing Officers During a Civil Disorder*[1]

#### Elements

In order to find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

Second, at the time of the defendant's act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

#### Definitions

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

---

1 *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 21-22), *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 15-16), *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 17), and *United States v. DaSilva*, 21-cr-564 (CJN) (ECF No. 76 at 2-3); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 22); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 26); *see also United States v. Grider*, 651 F. Supp. 3d 1, 13 (D.D.C. 2022) ("[T]he Court need not find that the defendant's actions *in fact* obstructed law officer officers. Rather, the Court need only find that the defendant committed or attempted to commit an act with the *specific intent* to obstruct law enforcement officers.").

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.[2]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[3]

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch.  The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.  The term "instrumentality" includes any other formal entity through which the government operates, such as the United Sates Capitol Police.[4]

For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the

---

2  Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *see also United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 18); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 21).

3  *See* 18 U.S.C. § 232(3).

4  *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971).").  For January 6 cases using this instruction, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 23), *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 26), *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 9), and *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 29-30).

term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[5]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the court may consider all of the evidence, including what the defendant did, said, or perceived.[6]

---

5 *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 19); *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 9); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 30). *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

6 *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7) (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)); *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 9) (same).

***Counts Two and Three – 18 U.S.C. § 111(a)(1) and (b) – Assaulting, Resisting, Or Impeding Officers[7]***

<u>Elements</u>

To find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, or impeded an officer from the U.S. Capitol Police or the Metropolitan Police Department.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the officer assaulted, resisted, or impeded was an officer or an employee of the United States who was then engaged in the performance of their official duties, or was assisting officers of the United States who were then engaged in the performance of their official duties.

Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon or inflicted bodily injury.[8]

<u>Definitions</u>

A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required. The court may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[9]

---

7 For January 6 trials that have used similar instructions, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 23 and 26); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 22).
8 *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002).
9 *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. To find that the defendant committed an "assault," the court must find beyond a reasonable doubt that the defendant intended to inflict or to threaten injury. Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.[10]

The terms "resist" and "impede" carry their everyday, ordinary meanings.

The term "bodily injury" means an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. Bodily injury includes a cut, abrasion, bruise, burn or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary.[11]

---

be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases).  For a January 6 case using this definition, see *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19).

10  *United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.").  For other January 6 trials that have used similar instructions, see *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 30), *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 14), *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 23), and *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19-20).

11  *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *8 (D.D.C. Apr. 8, 2024) (finding "no reason to depart from" the "sensible course" of the many circuits that have defined "bodily injury" to "include[] 'physical pain' without any temporal requirement, as well as "'any other injury to the body, no matter how temporary.'""); Fifth Circuit Model Jury Instruction No.

An object may be a "deadly or dangerous weapon" in one of two ways. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Such inherently dangerous weapons include guns, knives, and the like. Second, if the object is not inherently or obviously dangerous or deadly, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant used it in that manner.[12] In determining whether the object is a "deadly or dangerous weapon," the court may consider both the physical capabilities of the object used and the manner in which the defendant used it.

The term "serious bodily injury" means bodily injury which involves a substantial risk of

---

2.07; Tenth Circuit Model Jury Instruction No. 2.09; 18 U.S.C. § 1365(g)(4). For a January 6 case using this definition, see *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 20).
12 *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("For an object that is not inherently deadly . . . the following additional element is required: (4) the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner."); *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) ("An object is a dangerous weapon . . . if it is either inherently dangerous or otherwise used in a manner likely to endanger life or inflict great bodily harm. . . . Inherently dangerous weapons . . . are obviously dangerous objects such as guns, knives, and the like.") (quotation marks omitted); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Thus, the term 'dangerous weapon' is not restricted to such obviously dangerous weapons as guns, knives, and the like, but can include virtually any object given appropriate circumstances."). For January 6 trials that have used a similar instruction, see *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 15), *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 27), and *United States v. Easterday*, 22-cr-404 (JEB) (ECF No. 67 at 12).
        The correct standard is whether the object is *capable* of causing serious bodily injury, not whether it is *likely* to cause serious bodily injury. *See United States v. Samsel, et. al*, 21-cr-537 (Minute Order of Nov. 2, 2023) ("The Court has also declined to find that a deadly or dangerous weapon is one which is *likely* to cause serious bodily injury or death. The controlling precedent is this Circuit is clear that a deadly or dangerous weapon is any object which is *capable* of causing serious bodily injury or harm to another person." (emphasis in original) (citing *Arrington*, 309 F.3d at 45).). See also *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *6 (D.D.C. Apr. 8, 2024) (rejecting claim that 111(b) requires the weapon be *likely* to cause serious bodily injury and finding, "for purposes of § 111(b)'s dangerous-or-deadly-weapon element, it is enough to establish that an object was used in a manner capable of causing serious injury").

23

death; extreme physical pain; medical intervention such as surgery, hospitalization, or physical rehabilitation; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. [13]

It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, carrying out an official duty or assisting federal officers in carrying out an official duty, so long as it is established beyond a reasonable doubt that the officer was, in fact, carrying out an official duty or assisting a federal officer acting in the course of his duty, and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer. [14]

### *Lesser Offense - Assaulting, Resisting, or Impeding Certain Officers with Physical Contact or Intent to Commit Another Felony*

To find the defendant guilty of the lesser offense of Counts Two or Three, that is, assaulting, resisting, or impeding certain officers, the court must find the same elements referenced below for Count Four beyond a reasonable doubt.

### *Count Four – 18 U.S.C. § 111(a)(1) – Assaulting, Resisting, Or Impeding Officers*

### Elements

To find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, or impeded an officer from the U.S. Capitol Police

---

13  18 U.S.C. §§ 831(g)(4), 1864(d)(1), & 1365(h)(3); USSG §1B1.1 n.1(M); *see also United States v. Easterday*, 22-cr-404 (JEB) (ECF No. 67 at 12).

14  *United States v. Celentano*, 22-cr-186 (TJK) (ECF No. 64 at 12); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 30); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 20-21).

or the Metropolitan Police Department.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the officer assaulted, resisted, or impeded was an officer or an employee of the United States who was then engaged in the performance of their official duties, or was assisting officers of the United States who were then engaged in the performance of their official duties.

Fifth, the defendant made physical contact with that officer or acted with the intent to commit another felony. For the purposes of this element, "another felony" refers to the offense charged in Counts One.

<u>Definitions</u>

A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required. The court may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[15]

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. To find that the defendant committed an "assault," the court must find beyond a reasonable doubt that the defendant intended to inflict or to threaten injury. Injury means any physical injury, however small, including a touching

---

[15] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases).   For a January 6 case using this definition, see *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19).

offensive to a person of reasonable sensibility.[16]

The terms "resist" and "impede" carry their everyday, ordinary meanings.

It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, or impeded was, at that time, carrying out an official duty or assisting federal officers in carrying out an official duty, so long as it is established beyond a reasonable doubt that the officer was, in fact, carrying out an official duty or assisting a federal officer acting in the course of his duty, and that the defendant intentionally forcibly assaulted, resisted, or impeded with that officer.[17]

---

[16] *United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); *United States v. Sabol*, 534 F. Supp. 3d 58 (D.D.C. 2021) (discussing an assault during the January 6 attack on the U.S. Capitol building that involved the defendant wrestling away an officer's baton); and Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility."). For other January 6 trials that have used similar instructions, see *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 30), *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 14), *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 23), and *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19-20).
[17] *United States v. Celentano*, 22-cr-186 (TJK) (ECF No. 64 at 12); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 30); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 20-21).

***Count Five – 18 U.S.C. § 1752(a)(1) and (b)(1)(A) – Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon*** [18]

<u>Elements</u>

In order to find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly. [19]

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and

---

18  18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).   For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 30).

19  Section 1752 requires proof that the defendant knew he or she acted in a restricted building or grounds without lawful authority, but does not require proof that the defendant knew the reason the area was restricted due to the presence of a U.S. Secret Service protectee.   *United States v. Carnell et al.*, 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF No. 98 at 10-12). "Under Section 1752, the USSS-protectee requirement in a part of the definitional subsection has no bearing on the "wrongfulness [or] innocence" of the conduct, and proof of knowledge of the USSS-protectee requirement is accordingly not required." *Id.* at 31.   Several other courts in this district have similarly held that knowledge of the reason the area was restricted is not required. *See* Trial Tr. at 1199–1200, *United States v. Vo*, No. 21-cr-509 (TSC), ECF No. 130 (D.D.C. Sept. 22, 2023) (Chutkan, J.); Trial Tr. at 8, *United States v. Eicher*, No. 22-cr-38 (BAH) (D.D.C. June 14, 2023) (Howell, J.); Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 104 (D.D.C. Apr. 24, 2023) (Contreras, J.); Trial Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022) (McFadden, J.).   To be sure, some courts in this district have come to the opposite conclusion, but those opinions did not analyze the jurisdictional aspect of the statute and came to the wrong result.   *See* Verdict Tr. at 4, *United States v. Samsel*, No. 21-cr-537 (JMC) (D.D.C. Feb. 2, 2024) (Cobb, J.); *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (Cooper, J.); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932, at *7 (D.D.C. Dec. 1, 2023) (Nichols, J.); *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842, at *4 (D.D.C. July 13, 2023) (Lamberth, J.). The D.C. Circuit is expected to decide this issue in *United States v. Griffin*, No. 22-3042 (oral argument held Dec. 4, 2023).

in relation to the offense.[20]

Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  In deciding whether the defendant acted knowingly, the court may consider all of the evidence, including what the defendant did, said, or perceived.[21] The term "knowingly" has the same meaning described in the instructions above.

The term "deadly or dangerous weapon" has a similar meaning to the meaning described above. An object may be considered a "deadly or dangerous weapon" for one of two reasons. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Second, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily

---

20 *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 34); *United States v. Schwartz, et al*, 21-cr-178 (APM) (ECF No. 172 at 24).

21 *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death.[22] However, for purposes of this offense, unlike the offense in Counts Two and Three, the defendant need not have actually used the object in that manner.

The term "serious bodily injury" has the same meaning described in the instructions for Counts Two and Three.

<u>*Lesser-Included Offense*</u>

In order to find the defendant guilty of the lesser offense of Count Five, that is, entering or remaining in a restricted building or grounds, the court must find the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

**Count Six – 18 U.S.C. § 1752(a)(2) and (b)(1)(A) – Disorderly or Disruptive Conduct in a Restricted Building with a Deadly or Dangerous Weapon**

<u>Elements</u>

In order to find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

---

22 *See United States v. Christie*, 23-cr-5 (APM) (Order, ECF 64, at 3) (defining "deadly or dangerous weapon" under 1752(b)(1)(A) and noting that unlike for purposes of 18 U.S.C. § 111(b), "[t]he defendant need not have actually used the object in that manner").

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[23]

Definitions

"Disorderly conduct" is conduct that, when viewed in the circumstances in which it takes place, is likely to endanger public safety or create a public disturbance.[24] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[25]

"Disruptive conduct" is conduct that, when viewed in the circumstances in which it takes place, tends to interfere with or inhibit usual proceedings.[26]  This includes conduct that causes

23  *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 37); *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 25); *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 22), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 16).

24  *United States v. Alford*, 89 F.4th 943, 950 (D.C. Cir. 2024); *see also United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

25  *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 237-38).

26  *United States v. Alford*, 89 F.4th 943, 951 (D.C. Cir. 2024).

disorder or turmoil, or that stops or prevents the normal continuance of an activity.  Whether particular conduct is "disruptive" depends on the context and surrounding circumstances, and includes conduct that is plainly out of place for the time or setting where it occurs.[27]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions above. The terms "deadly and dangerous weapon" also has the same meaning described above.

### *Lesser-Included Offense*

In order to find the defendant guilty of the lesser offense of Count Six, that is, disorderly or disruptive conduct in a restricted building or grounds, the court must find the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

---

27  *United States v. Alford*, 89 F.4th 943, 950-51 (D.C. Cir. 2024) (noting that "disrupt" means "to throw into disorder or turmoil" and that "disruptive actions are those that are inappropriate or plainly out of place for the time or setting").

***Count Seven – 18 U.S.C. § 1752(a)(4) and (b)(1)(A) – Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon[28]***

<u>Elements</u>

In order to find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

<u>Definitions</u>

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual; or damage to, or destruction of, real or personal property.

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions above. The term "deadly and dangerous weapon" also has the same meaning described in the instructions.

<u>*Lesser-Included Offense*</u>

In order to find the defendant guilty of the lesser offense of Count Seven, that is, engaging in physical violence in a restricted building or grounds, the court must find the following elements beyond a reasonable doubt:

---

28 *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 30); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 34); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 40); *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 18); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 40-41).

First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

Second, the defendant did so knowingly.

### Count Eight – 40 U.S.C. § 5104(e)(2)(F) – Act of Physical Violence at the Capitol Building or Grounds[29]

#### Elements

In order to find the defendant guilty of this offense, the court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

Second, the defendant acted willfully and knowingly.

#### Definitions

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or involving damage to, or destruction of, real or personal property. For purposes of this offense, unlike in Count Seven, the threat of infliction of bodily harm is sufficient to meet this definition.

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions above. The terms "knowingly" and "willfully" have the same meaning described in the instructions above.

---

[29] *United States v. Alberts*, 21-cr-26 (CRC) (ECF No. 147 at 20); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 36); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 43), *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 19). *See also United States v. Jones*, 21-cr-213 (RJL) (ECF No. 75 at 9-10) (notes for bench verdict setting out elements and defining "act of physical violence" to include destruction of property).

## VI.    Affirmative Defenses

The defense has confirmed that they will not pursue any affirmative defense including

public authority, self-defense/defense of others, or the First Amendment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     */s/ Shalin Nohria*
SHALIN NOHRIA
Assistant United States Attorney
D.C. Bar No. 1644392
United States Attorney's Office
601 D St. NW
Washington, D.C.
shalin.nohria@usdoj.gov

*/s/ Benjamin J. Smith*
BENJAMIN J. SMITH
Assistant United States Attorney
N.Y. Bar Number 5220637
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 304-0977
Benjamin.smith4@usdoj.gov