UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | No. 1:23-cr-287 (JDB) |
| v. | : | |
| | : | |
| | : | |
| ODIN MEACHAM | : | |

**DEFENSE'S REPLY TO**
**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM OF LAW**

The defense respectfully submits this reply to the Government's Supplemental Memorandum of Law Regarding Violations of 18 U.S.C. § 1752 and 18 U.S.C. § 111(a) (Gov't Memo) (ECF 41).

**I.     For the 1752 counts, the government must prove Mr. Meacham knew that then-Vice President Mike Pence was temporarily visiting the Capitol.**

1) The plain text and well-established principles of statutory interpretation show that § 1752 requires knowledge of a protectee's presence.

Proof of mens rea "requires proof 'that the defendant know the facts that make his conduct illegal.'" *United States v. Ford*, 821 F.3d 63, 68 (1st Cir. 2016) (quoting *Staples v. United States*, 511 U.S. 600, 605 (1994)). *See also id*. at 70 ("Customarily, the mens rea element is satisfied if the defendant 'know[s] the facts that make his conduct fit the definition of the offense.'" *Id*. (quoting *Staples*, 511 U.S. at 607 n.3) (alteration in original)). Whether § 1752 requires that a defendant know the relevant building or grounds was restricted is a matter of statutory interpretation.

The government's position is that the word "knowingly" only goes as far as the first half of the definition of restricted buildings or grounds. *See* Gov't Memo, ECF 41 at 30. In advancing this argument, the government ignores fundamental principles of statutory construction, substituting for them criticisms of district court opinions and dubious analogies to different

1

statutory schemes. None of this is a substitute for well-established principles of statutory interpretation.

Statutory interpretation begins with the text of the statute itself. *United States v. Alford*, 89 F.4th 943, 949 (D.C. Cir. 2024). Several conventions govern the way courts read the text of statutes. Courts give "words their plain, everyday meaning unless Congress 'employs a term of art,' in which case 'it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'" *Id*. (*quoting F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012)).

The plain meaning of statutory language is affected by the context in which the words appear: "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Am. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 796 F.3d 18, 23 (D.C. Cir. 2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132–33 (2000) (internal quotation omitted)).

The inquiry ends with the text of the statute "if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997). And when confronted with clear and unambiguous statutory language, a court's "duty is simply to enforce the statute that Congress has drafted." *United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022); *see also Nat'l RR. Passenger Corp. v. United States*, 431 F.3d 374, 377–78 (D.C. Cir. 2005) (rejecting government's request for judicial expansion of the statute in favor of its "plain and unambiguous language") (citing *Iselin v. United States*, 270 U.S. 245, 250–51 (1926)).

Some interpretive requirements also govern the reach of the words of the statute. When the law is a criminal one, courts almost invariably read a mens rea into a text for every element that makes conduct culpable: "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Rehaif v. United States*, 588 U.S. 225, 229 (2019) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)); *see also id*. at 228 ("Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent. In determining Congress's intent, we start from a longstanding presumption that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct.") (cleaned up); *Flores-Figueroa v. United States,* 556 U.S. 646, 652 (2009) ([C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."); *id*. at 660 (Alito, J., concurring in part and concurring in the judgment) ("In interpreting a criminal statute such as the one before us, I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense[.]").

So fundamental is the mens rea requirement in criminal law that courts apply "the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text." *Rehaif*, 588 U.S. at 229 (quoting *Staples*, 511 U.S. at 606). Silence as to mens rea "by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element" because courts must "construe the statute in light of the background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded." *Staples*, 511 U.S. at 605 (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436-37 (1978)).

As observed in *U.S. Gypsum Co.*, "[t]he existence of a mens rea [i.e., mental state or state of mind] is the rule of, rather than the exception to, Anglo-American jurisprudence." 438 U.S. at 436 (citation omitted). The correct reading of a statute is one that attaches a mens rea to each element of a crime that separates guilty from innocent conduct, and it is almost impossible to overstate the importance of getting it right.  As Justice Robert Jackson wrote in *Morissette v. United States*:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Morissette v. United States*, 342 U.S. 246, 250 (1952). The importance of mens rea in separating innocent from guilty conduct leads directly to other interpretive principles. When a statute like § 1752 uses the word "knowing" once, the knowing mens rea reaches to all the elements of the offense.

So, in the end, what do these principles of statutory interpretation boil down to? The statute demands that the "knowing" mens rea be applied to the full definition of the phrase "restricted buildings or grounds." In Mr. Meacham's case, that means knowledge of the protectee-presence element. To read the statute as the government proposes directly conflicts with the Supreme Court's teaching that when a statute punishes *knowing* conduct vis-à-vis the facts about a specific item (i.e., drugs, weapons), the defendant must know "of the features" that bring the item and thus the conduct "within the scope" of the law. *Staples*, 511 U.S. at 609. The government's proposed interpretation would also bring about absurd results. A hunter, for example, who passes a "no entry" sign in the woods and believes he is committing simple trespassing, could be convicted of a felony with a ten-year maximum sentence because a

protectee happened to be hunting in the same woods. *See* 18 U.S.C. § 1752(b)(1)(A) (entering a restricted area with a deadly weapon).

The government attempts to avoid these problems by first arguing that a defendant need not know that a person qualifies for Secret Service protection under the statute to violate § 1752. Indeed, the government conjures up an infinite regress of cross references to different statutes and their definitions. Gov't Memo, ECF 41 at 25. But that is a different question than whether a defendant must know that a particular person is temporarily visiting, making the area restricted. The fact that someone *is* protected by the Secret Service may confer federal jurisdiction, but § 1752 does not require proof that a defendant knew someone *was* protected by the Secret Service for conviction. All that is needed is that a defendant knew the Secret Service protectee was or would be present. *That* is the defining feature of the offense.

Next, the government appears to suggest that a statute's mens rea should be defined according to the government's need for it to take a particular form: "[T]he government has charged over 1,200 individuals with violating Section 1752 on January 6, 2021, in addition to prosecutions stemming from violations on other dates. Requiring the government to prove a heightened level of knowledge for these misdemeanor convictions could, depending on the procedural posture, jeopardize those prosecutions." *Id.* at 26. The government has identified no principle of statutory construction that suggests a statute should be read to ease the government's burden in cases it deems important or numerous. Indeed, the fact that the government is charging large numbers with violations of a particular statute is all the more reason to follow ordinary mens rea requirements.

Finally, the government criticizes Judge Nichols's contrary decision in *United States v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023), for not taking into

account whether the mens rea element is only jurisdictional under *United States v. Feola*, 420 U.S. 671 (1975). *See Gov't Memo*, ECF 41 at 27. But complaining that an element is "only jurisdictional" is admitting that it is an element in the first place. If the only problem the government sees with *Elizalde* is that it mistakes the nature of the element, the government is admitting that knowledge of the whole definition of a restricted building or grounds is an element.[1] *Id.* at 29 (complaining that *Elizalde* does not recognize that mens rea does not travel to elements that are only jurisdictional requirements).[2]

    2) The protectee-presence element is not "jurisdictional only" under *Feola*.

Perhaps sensing the weakness with its statutory argument, the government adopts a secondary approach. Relying on *Feola*, it argues that the federal protectee element of § 1752 falls into the narrow exception of "jurisdictional elements" that "do not describe the evil Congress seeks to prevent." *Rehaif*, 139 S.Ct. at 2196 (internal quotations omitted). The government is incorrect.

The federal assault statute at issue in *Feola* is different in kind than § 1752. *Feola* held that assault on a federal officer under 18 U.S.C. § 111 does not have a mens rea requirement as to the status of the victim as a federal officer because that element is jurisdictional. *Feola*, 420 U.S. at 677 n.9. But the fact that one element "implicates factors that are an appropriate subject for federal concern" does not mean it is "jurisdictional *only*." *Id*. (emphasis added). *Feola* is clear that an element can be both substantive and jurisdictional: "The question, then, is not whether the requirement is jurisdictional, but whether it is jurisdictional only." *Id*.

---

[1] The government also argues that *Elizalde* misunderstands "how much the defendant has to know to commit an offense." The ordinary rules that govern this question are discussed above.

[2] The government cites to *United States v. Yermian*, 468 U.S. 63 (1984), to bolster its claim that it need not prove a defendant knew that a Secret Service protectee was or would be present. This claim is without merit. In *Yermian*, the Supreme Court explicitly reserved the question of whether the jurisdictional element included some degree of culpability. *Id*. at 75 n.14.

*Feola* is not an outlier in this respect. While some standard jurisdictional elements are easily recognized as jurisdictional only, others are both jurisdictional and substantive: "[A]n element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful." *Torres v. Lynch*, 578 U.S. 452, 471 (2016). A "standard interstate commerce element, of the kind appearing in a great many federal laws, is almost always a simple jurisdictional hook," but other provisions that confer federal jurisdiction may also define the behavior Congress thought harmful. *Id.*

The status of the victim in *Feola* was jurisdictional only because the legislative history clearly demonstrated that Congress was not legislating a new, federal version of assault, but merely creating a federal forum for the very same state offense: "Congress understood that it … in large part was *duplicating state proscriptions* in order to insure a federal forum for the trial of offenses involving federal officers." *Feola*, 420 U.S. at 683–84 (emphasis added). Congressional intent was to create a federal forum, not to distinguish the assault of a federal officer as a different evil than the assault of a state officer or private citizen:[3] "From the days of prohibition to the days of the modern civil rights movement, the statutes federal agents have sworn to uphold and enforce have not always been popular in every corner of the Nation. Congress may well have concluded that § 111 was necessary in order to insure uniformly vigorous protection of federal personnel, including those engaged in locally unpopular activity." *Feola*, 420 U.S. at 684. The

---

[3] *Feola* concerned the second half of § 111, which proscribes assault on federal officers, but the majority has something to say about the treatment of the prohibition on murdering federal officers in § 111(a) as well. In response to the dissent's argument that § 111(b) filled a gap (aggravated assault on a federal officer) in state law, the majority observes that there were no gaps to be filled in state law regarding murder. The first half of § 111 duplicates state murder law and the second half duplicates state assault law: "[I]f the congressional judgment that there was need to prosecute in federal courts assaults upon federal officers regardless of the reach of state law was 'nonsense,' enactment of the homicide prohibition—completely duplicating the coverage of state statutes—was legislative fatuity. It is more plausible, we think, to conclude that Congress chose not to entrust to the States sole responsibility for the interdiction of attacks, fatal or not, upon federal law enforcement officials." *Feola*, 420 U.S. at 684 n.18. The federal statute prohibited the same criminal activity as the state, whether it was murder or assault; all that the identity of the victim changed nothing about the crime except the forum in which it could be prosecuted.

7

identity of the victim of a § 111 prosecution is an element to create federal jurisdiction and no more, and so there is no need for the Government to prove a mens rea connected to it.

The legislative history of § 1752 is different. Congress could not merely duplicate existing state and local laws protecting locations the president might be temporarily visiting and add a jurisdictional-only element to ensure a federal forum. For one thing, the legislative history of § 1752 revealed a concern over a patchwork of state and local laws that offered inadequate protection for the president's safety: "Serious problems have arisen because the State laws and local ordinances vary widely as to application and extent of conduct proscribed." Congr. Rec. – Sen., Oct. 8, 1970, at 35361 (Senator McClellan). As *Feola* points out, Congress could duplicate the substantive state law of assault in passing § 111. *Feola*, 420 U.S. at 683–84 & n. 18. But the aim of § 1752 was to create new protections for the president, not merely to federalize old ones: "No longer, though, will presidential security *depend upon differing local ordinances*, some of which may be of dubious constitutionality. S.2896 will provide for the *consistent, uniform enforcement of a narrow, precisely drawn statute that proscribes specific conduct* for the protection of the President and his environment." Congr. Rec. – Sen., Oct. 8, 1970, at 35361 (Senator McClellan) (emphasis added).

Senator Hruska also remarked on the need for a single law providing a uniform standard for protecting the president; the bill was "designed to *increase* the protection of the President while he is in a temporary residence and while he is temporarily visiting in a designated area." Congr. Rec. – Sen., Oct. 8, 1970, at 35653-54 (Senator Hruska) (emphasis added). The law was intended from its inception to replace a patchwork of state and local judgments about what protections were necessary with a different federal standard. The law was to increase the president's protection "through a narrow, precisely drawn Federal statute which *proscribes*

*specific forms of conduct deemed by Congress* to unduly jeopardize the President's safety." The displacement of state standards by federal ones is explicit under this view: "No longer would the security of the President depend completely on differing State statutes and local ordinances." *Id*.

The only work the status of the victim did in *Feola* was to create federal jurisdiction in a law that otherwise duplicated existing state law. But § 1752 created a new federal law that "proscribes specific forms of conduct" Congress has deemed particularly dangerous to the president, replacing "differing local ordinances" with a single federal standard. The factors that made the victim status element jurisdictional only in *Feola* are not present here. And, as *Feola* recognizes, an element need not be one thing or the other. *See also Torres*, 578 U.S. at 471 (2016) ("[A]n element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful.").

The provisions of § 1752 do real work in defining a new offense rather than just adding federal jurisdiction to an old one. The substantive elements of a crime "relate to the harm or evil the law seeks to prevent." *Torres*, 578 U.S. at 457. Under this rule, the full definition of "restricted building or grounds" is a substantive element. The five subsections of 1752(a) all require a prohibited activity in or near specific locations that are "restricted" because of their national importance, security interests, or significance.

Under the government's analysis, a defendant need only know that he commits a prohibited act in or near to an area that is "posted, cordoned off, or otherwise restricted." 18 U.S.C. § 1752(c)(1); *See Gov't Memo,* ECF 41 at 30. According to the government's theory, the substantive evil at which the statute aims is walking past a sign or slipping under a rope line. But the harm of disregarding a cordon depends entirely on *what is on the other side of that cordon*. When that cordon surrounds one of the three areas enumerated in § 1752 – in this case, a

building or grounds where a Secret Service protectee is temporarily visiting—that is the very wrong Congress criminalized in § 1752. Put another way, the defendant's proximity to a protectee is not incidental to a § 1752 offense. It *is* the offense. At a minimum, it is not only jurisdictional only.

> 3) Alternatively, the court should adopt Judge Cooper's holding about jurisdiction in *Groseclose*.

Even if the court believes *Feola* controls the analysis as § 1752 as first enacted in 1970, subsequent legislative changes cast the statute into a different light. On this point, the defense respectfully refers the court to Judge Cooper's analysis in *United States v. Groseclose,* No. 21-cr-311 (CRC), 2024 WL 68248 (D.D.C. Jan. 5, 2024). As Judge Cooper observed, Congress amended § 1752 as part of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 (2006). In addition to redrafting the statute to place the three triggering conditions into the definitional section, Congress also doubled the maximum penalty from six months to one year. This "significant increase," Judge Cooper wrote, "was not mere penalty inflation." *Id*. at *8. The House Conference Report explained that it was "doubl[ing] the statutory penalties (from 6 months to 1 year) for violations of § 1752, to make the penalty consistent with the prescribed penalty under 18 U.S.C. § 3056(d) (interference with Secret Service law enforcement personnel generally)." H.R. Conf. Rep. 109- 333, at 110. Section 3056(d), in turn, defines the Secret Service's various duties and proscribes that "[w]hoever knowingly and willfully obstructs, resists, or interferes with a Federal law enforcement agent engaged in the performance of the protective functions authorized by this section or by section 1752 of this title shall be fined not more than $1,000 or imprisoned not more than one year, or both." Thus, in Congress's eyes, "both culprits were equally culpable and should be treated alike." *Id*.

Judge Cooper held that, by adopting this view, "Congress seems to have reconceptualized § 1752 and created a different sort of federal crime." *Id.* Even if Congress in 1970 conceived of § 1752 as duplicating state prohibitions to confer federal jurisdiction, much like the Supreme Court in *Feola* understood 18 U.S.C. § 111, Congress in 2005 did not share this understanding. It instead viewed § 1752 as precisely the type of offense that the majority in *Feola* went out of its way to distinguish: an *aggravated* offense leveling an added penalty against those who endanger Secret Service protectees. Congress perceived a violator of § 1752 as on par with the individual who "*knowingly* and willfully obstructs, resists, or interferes with a Federal law enforcement agent engaged in the performance of the protective functions." 18 U.S.C. § 3056(d) (emphasis added). To violate the latter offense, one must know that the individual that he is obstructing, resisting, or interfering is a law enforcement officer performing his official duties. That is what makes the conduct wrongful and deserving of up to one year of imprisonment—or up to 10 years if a person carries a deadly or dangerous weapon while doing so. To warrant the enhanced penalty, the culprit must know that, in some sense, he is endangering the Secret Service and their protectees. That extra layer of knowledge is what sets § 1752 violators apart and makes them worthy of the aggravated prohibition; it is not jurisdictional only. *Id*.

The defense respectfully asks the court to reach the same conclusion in Mr. Meacham's case.[4] To convict Mr. Meacham of violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), the government must prove beyond a reasonable doubt that he knew that (1) the Capitol building and its grounds were "posted, cordoned off, or otherwise restricted" on January 6 *and* (2) a "person protected by the Secret Service [was] or [would] be temporarily visiting" the Capitol that day.

---

[4] At a minimum, any ambiguity in the statute should be resolved in favor of Mr. Meacham. *See, e.g., Cleveland v. United States*, 531 U.S. 12, 25 (2000) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (citation omitted)).

11

**II.     An assault is a necessary element of any offense under 18 U.S.C. § 111(a).**

The government offers several arguments in support of its position that § 111(a) does not require an assault. None are persuasive.

The government first appeals to plain language, arguing that § 111(a) does not require an assault because each clause of § 111(a) "points back" to the statute's six categories of prohibited conduct. Gov't Memo, ECF 41 at 31. The government misreads the statute. In fact, the misdemeanor section of § 111(a) points back to actions that constitute "*only* simple assault." § 111(a) (emphasis added). Similarly, §111(a)'s felony provision points back to "physical contact with the victim *of that assault* or intent to commit another felony." *Id.* (emphasis added). These explicit refences to assault confirm that both misdemeanor and felony offenses under § 111(a) share assault as an element.

Next, the government invokes the surplusage canon, arguing that its interpretation of § 111(a) gives effect to every word of the statute while Mr. Meacham's does not. Gov't Memo, ECF 41 at 31-37. The government's reasoning is flawed on this point for a few reasons. As a threshold matter, the principle of giving each word or phrase in a statute some effect is not absolute. As Justice Scalia explained, the canon should not be applied to instances of iteration. *See, e.g., Moskal v. United States*, 498 U.S. 103, 120-21 (1990) (Scalia, J., dissenting) (citing examples like "rest, residue, and remainder" and "right, title, and interest"). Beyond § 111(a), the court will find other iterative lists in Title 18—for example, the wire fraud statute that criminalizes "any scheme or artifice to defraud, or…obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343.

The government's reading also ignores the substantial overlap between the various verbs in § 111(a). For example, the words "impede" and "interfere" are synonymous.[5] Similarly, any definition of "opposes" necessarily encompasses the definition of "resists," rendering the latter superfluous.[6] The verbs in § 111(a) are precisely the type for which the surplusage canon does not apply.

The government's surplusage argument also rests on a string of inapposite and poorly reasoned cases. Gov't Memo, ECF 41 at 31-36. Consider *United States v. Stands Alone.* 11 F.4th 532 (7th Cir. 2021). The government cites *Stands Alone* for the proposition that assault is not an essential element of every § 111 offense. Gov't Memo, ECF 41 at 37. But *Stand Alone* focuses on § 111(b), not § 111(a). Subsection (b) does not contain the same delineation between a misdemeanor and a felony based on different types of assault. Rather, § 111(b) explicitly states that "[w]hoever, in the commission of *any acts described in subsection (a),* uses a deadly or dangerous weapon…or inflicts bodily injury, shall be fined or imprisoned not more than 20 years, or both." 18 U.S.C. § 111(b).

A better case from the Seventh Circuit is *United States v. Vallery*, which focuses on the pre-2008 version of § 111(a). 437 F.3d 626, 633 (7th Cir. 2006). In *Vallery*, the issue was whether the indictment properly alleged a felony offense under the earlier version of § 111(a). *Id*. at 628. The government charged the defendant with forcibly assaulting, resisting, impeding, and interfering with a federal correctional officer. *Id.* at 629. The government argued that, while physical contact is normally required to make an assault a felony, physical contact is not required

---

[5] "Impede" means "to interfere with or slow the progress of." Merriam-Webster, *available at* www.merriam-webster.com/dictionary/impede. To "interfere" with is "to interpose in a way that hinders or impedes…" Merriam-Webster, *available at* www.merriam-webster.com/dictionary/interfere.

[6] "Oppose" means "to place over against something so as to provide resistance, counterbalance, or contrast. Merriam-Webster, *available at* www.merriam-webster.com/dictionary/oppose. "Resist" means to "exert force in opposition," Merriam-Webster, *available at* www.merriam-webster.com/dictionary/resist.

for felonious resisting, opposing, impeding, intimidating, or interfering with a federal officer. *Id.* at 630. Vallery, on the other hand, argued that the misdemeanor simple assault provision "must be applied to all conduct prohibited by § 111(a)." *Id.* Rejecting many of the same arguments the government advances here, the Seventh Circuit sided with Vallery, holding that "the simple assault provision of § 111(a) applies to all violations of § 111(a), not merely 'assaults.'" *Id.* at 633.

The government also cites *United States v. Gagnon, United States v. Williams*, and *United States v. Briley* for its dubious "circuit tally." *Gov't Memo,* ECF 41 at 36-37. But in *Gagnon*, the Sixth Circuit ignored the plain meaning of the text, holding that "simple assault" does not mean "simple assault," but rather "a term of art that includes the forcible performance of any of the six proscribed actions in § 111(a) *without* the intent to cause physical contact or to commit a serious felony." 553 F.3d 1021, 2026 (6th Cir. 2009). *United States v. Williams* relies heavily on *Gagnon* and is less-than-persuasive for the same reasons. 602 F.3d 313, 318 (5th Cir. 2010) ("We adopt the Sixth Circuit rule and hold that a misdemeanor conviction under § 111(a) does not require underlying assaultive conduct."). The Fourth Circuit in *United States v. Briley* embraces *Gagnon* and *Williams* and goes a step further, holding that assault is not even required for a physical-contact felony conviction under § 111(a). 770 F.3d 267, 273-74 (4th Cir. 2014). At their core, these cases misconstrue § 111(a) by conflating the distinct verbs listed in the prefatory clause of the statute and treating the phrase "assault" as shorthand for "the forcible performance of any of the six acts proscribed actions." *Gagnon*, 553 F.3d at 1027. These cases also violate the canon of construction that, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *United States v. Turley*, 352 U.S. 407, 411 (1957).

14

The government also appeals to legislative history to support its view that § 111(a) does not require an assault. *Gov't Memo,* ECF 41 at 31-35. But the government gets the history wrong, which leads it to dismiss persuasive caselaw addressing assault and § 111(a).

To review, prior to January 6, 2021, §111 was last amended in 2008. See Pub. L. 110177, title II, § 208(b), Jan. 7, 2008, 121 Stat. 2538. Prior to the 2008 amendment, the statute read as follows:

> (a) In General.—Whoever—
>
> > (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;[7] or
>
> > (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111(a)(1) (2007).

Under the 2008 amendment, subsections (a)(1), (a)(2), and (b) remained the same, but Congress revised the hanging paragraph in subsection (a) to replace the felony penalty provision phrase "in all other cases" with specific aggravating factors: "where such acts involve physical

---

[7] 18 U.S.C. § 1114 addresses the killing or attempted killing of "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)."

contact with the victim of that assault or the intent to commit another felony." Pub. L. 110-177, title II, § 208(b), Jan. 7, 2008, 121 Stat. 2538. § 111(a). As amended in 2008, and as applicable to this case, § 111 provides:

> (a) In General.—Whoever—
>
>> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
>>
>> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only *simple assault*, be fined under this title or imprisoned not more than one year, or both, and *where such acts involve physical contact with the victim of that assault or the intent to commit another felony*, be fined under this title or imprisoned not more than 8 years, or both.

18 U.S.C. § 111(a) (emphasis added). In sum, the 2008 amendment specified in further detail the non-misdemeanor "other cases" described in the prior version of the statute to encompass physical contact with the victim of the assault or the intent to commit another felony.

In floor remarks during the Senate's consideration of the 2008 amendment, Senator Jon Kyl of Arizona explained that the 2008 amendment,

> clarifies an assault offense that was created by Congress in 1994. The offense establishes penalties for simple assault, assault with bodily injury, and for assault in "all other cases." As one might imagine, the meaning of assault in "all other cases" has been the subject of confusion and judicial debate. The offense has also been the subject of constant vagueness challenges, and although those legal challenges have been rejected, the offense is rather vague. Section 208 takes the opportunity to correct this legislative sin, *codifying what I believe is the most thoughtful explanation of what this language means, the 10th Circuit's decision in United States v. Hathaway, 318 F.3d 1001, 1008-09, 10th Cir. 2003.*

153 Cong. Rec. S15789-90 (Dec. 17, 2007) (emphasis added).

In *Hathaway,* the Tenth Circuit held that § 111(a) proscribed two offenses: "simple assault" and "all other cases assault." 318 F.3d at 1007-08. First, *Hathaway* defined assault

16

based on the common law as a "willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Id*. at 1008. It then defined "simple assault" to mean "assault which does not involve physical contact, a deadly or danger weapon, bodily injury, or the intent to commit murder or another felony other than those referred to in § 113(a)(2)." *Id*. With "simple assault" defined, and recognizing that subsection 111(b) already provided enhanced penalties for use of a deadly or dangerous weapon or an assault inflicting bodily injury, *Hathaway* defined "all other cases" assault as involving the remaining aggravating factors of common law assault—"assault that involves actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) but does not involve a deadly or danger weapon or bodily injury." *Id*. at 1008-09.

With those three offenses defined, *Hathaway* further held that "either actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) is a required and essential element of the felony offense of 'all other cases' assault under §111(a)."[8] *Id*. at 1009.

The Tenth Circuit later confirmed that "assault is necessarily an element of any § 111(a)(1) conviction," including a conviction under the felony clause. *United States v. Wolfname,* 835 F.3d 1214, 1218-19 (10th Cir. 2016). As it does here, the government in *Wolfname* argued that *Hathaway* was inapplicable because Congress amended § 111(a) in the ways described above. The Tenth Circuit rejected this argument, finding that "the 2008 amendment didn't controvert [its] holding in *Hathaway*; instead, it effectively codified it." 835

---

[8] 18 U.S.C. § 113(a)(2) at the time addressed "[a]ssault with intent to commit any felony, except murder or a felony under chapter 109A." Chapter 109A of Title 18 addresses sexual abuse. In any event, this exception described in *Hathaway* ultimately was not codified in the 2008 amendment. Section 113(a)(2) now cross-references only sections 2241 and 2242 in chapter 109A.

17

F.3d at 1220. As *Wolfname* explained, "*Hathaway* appears not only to have survived the 2008 amendment to § 111(a), but perhaps to have inspired it. *Id.* at 1223 (citing 153 Cong. Rec. S15789-01 (daily ed. Dec. 17, 2007) (statement of Sen. Kyl)). Just as *Hathaway* held that a felony under § 111(a) is an "assault that involves actual physical contact or the intent to commit [certain felonies] but does not involve a deadly or dangerous weapon or bodily injury," *Id.* at 1008, the 2008 amendment replaced "all other cases" with the substantively identical phrase from *Hathaway*: "involves physical contact or intent to commit another felony." *Id.*

The Second and Ninth Circuits have embraced the Tenth Circuit's approach. *See United States v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012) (holding that a misdemeanor under section § 111(a) requires a simple assault); *see also United States v. Chapman*, 528 F.3d 1215, 1221 (9th Cir. 2008) (holding that convictions under section § 111 "require at least some form of assault").

While the D.C. Circuit has not addressed this issue, two district courts have: Judge Moss in *United States v. Cua*, 657 F.Supp.3d 106 (D.D.C. 2023), and Judge Friedman in *United States v. Warnagiris*, No. 21-cr-382, 2023 WL 6926491 (D.D.C. Oct. 19, 2023). Both found that assault is a necessary element for § 111(a)'s misdemeanor offense and for the physical-contact felony offense, but not for the other-felony offense.

Finally, even if § 111(a) could be interpreted as the government wants—i.e., that a person may be convicted without the government proving an assault beyond a reasonable doubt—it is plainly not unambiguously so. If the defense's proposed construction renders terms superfluous, the government's interpretation renders the term "simple assault" meaningless and wreaks havoc with the structural division between a misdemeanor simple assault and a felony. The circuit split provides further support that the statute is at least ambiguous. Even *Gagnon* recognizes that the

statute "contains two ambiguities: First, it distinguishes between misdemeanor and felony conduct by use of the undefined term 'simple assault.' Second, and central to this case, the statute appears to outlaw several forms of conduct directed against federal officers." 602 F.3d at 315-16. Because the government's proposed interpretation is not unambiguously correct, the court is required under the rule of lenity to resolve those ambiguities in Mr. Meacham's favor by requiring an assault as an element of § 111(a). *United States v. Granderson,* 511 U.S. 39, 54 (1994); *United States v. Santos,* 553 U.S. 507, 515 (2008).

        Respectfully Submitted on June 3, 2024.

By:     /s/ Emily Stirba
Emily Stirba
Assistant Federal Public Defender
Federal Public Defender
District of Utah
46 West Broadway, Ste. 110
Salt Lake City, UT 84101
Telephone: (801) 524-4010
Email: emily_stirba@fd.org