UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | No. 1:23-cr-287 (JDB) |
| v. | : | |
| | : | |
| | : | |
| ODIN MEACHAM | : | |

**DEFENSE'S AMENDED TRIAL BRIEF**

The defense respectfully submits this amendment to its trial brief (ECF 39). The defense amends the definition it previously proposed for a "deadly or dangerous weapon" (applicable to Counts 2, 3, 5-7 (the §§ 111(b) and 1752 charges)). As Justice Frankfurter once observed, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600 (1949). The defense thus withdraws its previous definition and asks the Court instead to use the definition below (changes underlined).

> An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and Mr. Meacham used it <u>in a way likely to cause serious bodily injury or death</u>. In determining whether the object is a "deadly or dangerous weapon," the Court may consider both physical capabilities of the object used and the manner in which the object was used.[1]

In requesting this definition, the defense acknowledges that the Court may conclude it is bound by *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002), in which the D.C. Circuit defined a dangerous weapon as an object "capable of causing serious bodily injury or death to another person and the defendant ... use[d] it in that manner." To the extent the Court views *Arrington* as binding precedent requiring the Government to prove merely that an object is *capable* of causing

---

[1] The defense maintains that the appropriate definition of "serious bodily injury" is the definition set forth in 18 U.S.C. § 1365(h)(3).

1

death or serious bodily injury, instead of proving use in a manner that is *likely* to cause such harm, the defense submits that *Arrington* is wrongly decided and objects to it.

However, the defense submits that its proposed definition is consistent with *Arrington*. In that case, the D.C. Circuit explained that "[f]or an object that is not inherently deadly [or dangerous]" to satisfy § 111(b), the object must be "capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner." *Id.* (emphasis in orig.). But the court clarified that for a non-inherently dangerous object to be used as a "deadly or dangerous weapon," a defendant must use the object "in a deadly or dangerous manner." *Id.* "For a car to qualify as a deadly weapon," for example, "the defendant must use it as a deadly weapon and not simply as a mode of transportation." *Id.*

To use an object in a deadly or dangerous manner requires a showing of significant risk of harm, not just the possibility of it. First, this is consistent with the ordinary meaning of the word "dangerous." The word "dangerous" denotes a subset of a category that poses a particularly significant risk of harm. DANGEROUS, Black's Law Dictionary (11th ed. 2019) ("(Of a person, an object, etc.) likely to cause serious bodily harm <a dangerous weapon>"). When "dangerous" is paired with "weapon," the common meaning refers to a subset of objects likely to cause death or serious bodily harm when employed in the manner used by the defendant. If Congress meant to impose an increased statutory penalty for assaults in which an object was used that merely *could* have caused serious harm, it could have omitted the word "dangerous" from the statute. But the statutory text requires proof that an object is "dangerous," not just something that theoretically could cause serious harm, no matter how unlikely that risk may be.

Second, a legal framework that permits a defendant to be convicted for a dangerous weapon based on mere possibility of harm eliminates the Government's burden to establish that a person *used* the object in a "certain manner," namely a "deadly or dangerous manner." *Arrington*, 309 F.3d at 45. The Government's proposed definition is thus inconsistent with *Arrington*'s emphasis on the "manner" of use as essential to determining whether a non-inherently deadly object constitutes a "dangerous weapon." True, the D.C. Circuit in *Arrington* described the fourth element of § 111(b) in the context of non-inherently deadly objects as requiring proof that "the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner." *Arrington*, 309 F.3d at 45 (emphasis in orig.). But in this context, "capability" of causing death or serious bodily harm is a necessary condition, not a sufficient one. Construing this passage to define a "dangerous weapon" as including the use of any object that *could possibly* cause harm — no matter how unlikely the risk —ignores the context in which the D.C. Circuit explained the necessity for proof that a defendant "actually use[d] the object in a deadly [or dangerous] manner." *Id.*

Third, the defense's proposed definition is consistent with a long list of persuasive precedents that require proof that a non-inherently deadly object must be used in a manner that is "likely" to cause serious bodily injury. *See United States v. Johnson*, 324 F.2d 264, 266 (4th Cir. 1963); *United States v. Gibson*, 896 F.2d 206, 210 n.1 (6th Cir. 1990); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977); *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988); *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (en banc); *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994), *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982).[2]

---

[2] The defense notes that some of these cases also state that an object must be "capable" of causing harm. But the "capability" of an object to cause harm is only part of the inquiry into whether an object is "likely" to cause harm. No conflict exists between a court's requirement of proof of

3

Courts in this District have also defined the term "dangerous weapon" to require that the defendant used an object in a manner that is "likely" to cause serious bodily injury. *United States v. Chansley*, 525 F. Supp. 3d 151, 161-62 (D.D.C. 2021); *United States v. Klein*, 533 F. Supp. 3d 1, 12 n.6 (D.D.C. 2021);[3] *United States v. Munchel*, 2023 WL 2992689, at *4 n.5 (D.D.C. Apr. 18, 2023). While not all courts in this District have accepted this definition, *see, e.g., United States v. Easterday*, No. CR 22-404 (JEB), 2024 WL 1513527, at *5 (D.D.C. Apr. 8, 2024), the defense refers this Court to Judge Lamberth's observation in *Chansley*, that "courts have consistently defined 'dangerous weapon' as an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm." 525 F. Supp. 3d at 162 (collecting cases).

Finally, limiting the definition of a "dangerous weapon" to objects that are either designed to cause serious bodily injury or are used in a manner likely to cause serious bodily injury is the only statutory construction that avoids "an absurd and unjust result which Congress could not have intended." *Clinton v. City of New York*, 524 U.S. 417, 429 (1998) (citation omitted). If any object

---

capability of causing harm coupled with proof that a defendant used an object in a deadly or dangerous manner. *See Arrington*, 309 F.3d at 45; *see also Smith*, 561 F.3d at 939-40 (finding that defendant's use of prison-made knife was both "capable of causing serious bodily injury" and used "in a manner likely to inflict" serious bodily injury). In other words, both the capability of an object to cause harm *and* its use in a dangerous manner are required to establish that a non-inherently deadly object constitutes a dangerous weapon for purposes of the statute. *See Johnson*, 324 F.2d at 266 ("Not the object's latent capability alone, but that, coupled with the manner of its use, is determinative.").

[3] The defense is aware of this Court's decision in *United States v. McHugh*, stating that "[f]or an object that is not inherently deadly" the government must prove that "the object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner." No. CR 21-453 (JDB), 2023 WL 2384444, at *4 (D.D.C. Mar. 6, 2023) (citing *Arrington*, 309 F.3d at 45). But this Court has also cited the "likely" standard in the context of § 111(b). *United States v. Klein*, 533 F. Supp. at 12 n.6 (citing *United States v. Chansley*, 2021 WL 861079, at *7 (D.D.C. Mar. 8, 2021) (Lamberth, J.)).

4

that "in theory" could cause death or serious bodily harm constitutes a dangerous weapon, peanuts,[4] a rubber band,[5] a banana peel,[6] a snowball,[7] and innumerable other relatively innocuous objects could constitute "deadly or dangerous weapons" for purposes of 18 U.S.C. § 111(b) when used in an assault, thus raising the statutory maximum penalty from 8 to 20 years. Throwing a peanut or shooting a rubber-band at an officer, while theoretically capable of causing serious bodily harm, is not likely to do so. Such a statutory construction has absurd results, and it does not satisfy *Arrington*'s requirement that non-inherently dangerous items be used in a manner that is actually "dangerous" to the victim.

## CONCLUSION

In sum, a "dangerous weapon" for purposes of 18 U.S.C. § 111(b) and § 1752 means an item used in an assault (or carried on restricted grounds) that is actually "dangerous" – that is, likely to cause death or serious bodily injury to the victim by the manner in which it was used. It does not include an object that, based on the manner of use or intended use, may be capable of causing death or serious bodily injury, but is unlikely to do so.

Respectfully Submitted on June 10, 2024.

By:   /s/ Emily Stirba
Emily Stirba
Assistant Federal Public Defender
Federal Public Defender

---

[4] "Peanut allergy is the food allergy most likely to be fatal." Jonathan Bridges, *Suing for Peanuts*, 75 Notre Dame L. Rev. 1269, 1273 (2000).
[5] *Prows v. Indus. Comm'n of Utah*, 610 P.2d 1362, 1362 (Utah 1980) (discussing workers compensation claim for injury from rubber band).
[6] *Williamson v. F. W. Woolworth Co.*, 112 So. 2d 529, 532 (Miss. 1959) (discussing tort claim for injuries caused by slip on banana peel).
[7] *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003) (noting that "a snowball, spitball, or paper airplane" could be used to commit a battery under Indiana law, but such conduct would not constitute violent force for purposes of classification as a crime of violence.

District of Utah
46 West Broadway, Ste. 110
Salt Lake City, UT 84101
Telephone: (801) 524-4010
Email: emily_stirba@fd.org