UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-CR-287-JDB |
| | : | |
| ODIN MEACHAM | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENSE'S AMENDED TRIAL BRIEF**

In his amended trial brief (ECF No. 44), Defendant Odin Meacham contends that the Government must prove that he used a deadly or dangerous weapon(s) on January 6, 2021, in "a way likely to cause serious bodily injury or death." *See* Defense's Amended Trial Brief at 1.[1] This change to the Defendant's original proposed legal framework for this matter is substantively incorrect, and the Court should disregard the Defendant's proposed change and instead accept the legal framework proposed by both parties in their original trial briefs. *See* Government's Trial Brief (ECF 37, at 21-33) and Defendant's Trial Brief (ECF 39, at 3-8).

**ARGUMENT**

As laid out in the Government's Trial Brief, 18 U.S.C. § 111(b) provides an independent basis for an enhanced penalty where the defendant, in committing one of the specified acts, "uses a deadly or dangerous weapon." Similarly, 18 U.S.C. § 1752(b)(1)(A) increases the penalty for

---

[1] This proposed change pertains to the legal framework for Counts Two and Three (Assaulting, resisting, and impeding certain officers, using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b)(1); Count Five (Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Count Six (Disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); and Count Seven (Engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A).

violating that Section where the defendant "uses or carries a deadly or dangerous weapon[.]" In both parties' respective trial briefs, the definition offered for a deadly or dangerous weapon in the context of Sections 111(b) and 1752(b)(1)(A) required that the object "is capable of causing serious bodily injury or death to another person" and the defendant used (for § 111(b)) or carried it with the intent to use (for § 1752(b)(1)(A) it in that manner. *See* ECF 37, at 21; *see also* ECF 39, at 3. Now, in his Amended Trial Brief, the Defendant argues for a definition of deadly or dangerous weapon that requires the Defendant to have used the object in a way "likely" to cause serious bodily injury. *See* ECF 44 at 1. For reasons clearly established in Chief Judge Boasberg's recent decision in *United States v. Easterday*, 22-cr-404 (JEB), as well as substantial precedent in this and other Circuits, this argument is meritless.

Facing a very similar argument on how to define a deadly or dangerous weapon, Chief Judge Boasberg in *Easterday* specifically rejected the argument that an object must be used in a way "likely" to cause serious bodily injury to qualify as "deadly or dangerous." and instead held that "it is enough to establish that an object was used in a manner *capable* of causing serious injury." *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *6 (D.D.C. Apr. 8, 2024) (emphasis added). Importantly, the definition of a deadly or dangerous weapon in *Easterday* precisely tracked the standard set forth by the D.C. Circuit in *United States v. Arrington*: "For an object that is not inherently deadly, . . . the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner." 309 F.3d 40, 45 (D.C. Cir. 2002) (emphasis in original). In other words, for a non-inherently deadly weapon "to qualify as a deadly weapon, the defendant must use it as a deadly weapon" and not for some innocuous purpose. *Id.*

2

In addition to Chief Judge Boasberg, other judges in this district have similarly recognized that *Arrington* sets forth the governing definition of "deadly or dangerous weapon." *See, e.g.*, *United States v. McHugh*, No. 21-453 (JDB), 2023 WL 2384444, at *4 (D.D.C. Mar. 6, 2023) ("The D.C. Circuit approved a definition of 'deadly or dangerous weapon' in *United States v. Arrington*: '[f]or an object that is not inherently deadly' the government must prove that 'the object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner.'"); *United States v. Robertson*, 610 F. Supp. 3d 229, 237 (D.D.C. 2022) (Cooper, J.) ("The Court instructed the jury that the term 'deadly or dangerous weapon' meant that the stick had to be 'capable of causing serious bodily injury or death to another person and the defendant intends that it be used . . . in that manner.'"); *United States v. Schwartz, et al.*, 21-cr-178 (APM), ECF 172 at 16 ("an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. Objects that have perfectly peaceful purposes may be turned into dangerous weapons when used in a manner capable of causing serious bodily injury or death."); *United States v. Worrell*, 21-cr-292 (RCL), ECF 245 at 7-10 (same); *United States v. Wren et al.*, 21-cr-599 (RCL), ECF 121 at 37 (same); *United States v. Geitzen*, 22-cr-00116 (CJN), ECF 50 at 27 (same).

Other circuits have adopted the same test as *Arrington*—or even less stringent ones. *See Easterday*, at 10-11 ("What is more, *Arrington* is far from alone in adopting a definition of Section 111(b)'s 'dangerous or deadly weapon' element that requires only the ability to cause serious injury. Other circuits are broadly in agreement[.]") (collecting cases). By way of example, in *United States v. Gumbs*, the Eleventh Circuit approved of an instruction "that a 'motor vehicle is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.'" 964 F.3d 1340, 1348 (11th Cir. 2020). The court found the evidence sufficient to establish

that element because the defendant "used the car in a way that could have caused . . . serious bodily injury to the officers." *Id.* at 1351. The Eleventh Circuit model jury instructions set the bar lower, defining "deadly or dangerous weapon" as "any object that can cause death or present a danger of serious bodily injury. . . . To show that such a weapon was 'used,' the Government must prove that the Defendant possessed the weapon and intentionally displayed it during the forcible assault." 11th Cir. Model Crim. Jury Instr. O1.2 (March 2022).[2]

Other circuits have likewise articulated the standard in a manner consistent with *Easterday*, *Arrington*, and the Government's proposed definition. *See, e.g.*, *United States v. Gray*, 980 F.3d 264, 266-67 (2d Cir. 2020) ("We agree with the First Circuit, which, along with other courts of appeals, has held that '[a] defendant who acts forcibly using a deadly or dangerous weapon under § 111(b) must have used force by making physical contact with the federal employee, or at least threatened the employee, with an object that, as used, is capable of causing great bodily harm.'") (quoting *United States v. Taylor*, 848 F.3d 476, 494 (1st Cir. 2017)); *United States v. Wheeler*, 831 F. App'x 53, 56 (3d Cir. 2020) (citing *Gumbs* for the proposition that a defendant "had to intend to use the car and do so in such a manner that it was capable of causing serious bodily injury or

---

[2] Like the Eleventh Circuit model instructions, the model instructions from the Fifth, Seventh, and Tenth Circuits require only that (1) the weapon can be used to inflict serious bodily injury, and (2) the defendant displayed or otherwise used the weapon. *See* 5th Cir. Model Crim. Jury Instr. 2.07 ("The term 'deadly or dangerous weapon' means any object capable of inflicting death or bodily injury. For such a weapon to have been 'used,' the government must prove not only that the defendant possessed the weapon but also that the defendant intentionally displayed it while carrying out the forcible assault."); 7th Cir. Model Crim. Jury Instr. at 195 ("A 'deadly or dangerous weapon' means any object that can be used to inflict severe bodily harm or injury. The object need not actually be capable of inflicting harm or injury. Rather, an object is a deadly or dangerous weapon if it, or the manner in which it is used, would cause fear in the average person."); 10th Circuit Model Crim. Jury Instr. 2.09 ("The term 'deadly or dangerous weapon' includes any object capable of inflicting death or serious bodily injury. For such a weapon to have been "used," the government must prove that the defendant not only possessed the weapon, but that the defendant intentionally displayed it in some manner while forcibly [assaulting] [resisting] [opposing] [impeding] [intimidating] or [interfering with] the federal officer.").

death to another person") (cleaned up); *Taylor*, 848 F.3d at 494 ("A defendant who acts 'forcibly' using a deadly or dangerous weapon under § 111(b) must have used force by making physical contact with the federal employee, or at least threatened the employee, with an object that, as used, is capable of causing great bodily harm."); *United States v. Williams*, 520 F.3d 414, 421 (5th Cir. 2008) (approving Fifth Circuit Model Criminal Jury Instruction stating: "The term 'deadly or dangerous weapon' includes any object capable of inflicting death or serious bodily injury."); *United States v. Boman*, No. 95-2066, 1996 U.S. App. LEXIS 1357, at *9 (7th Cir. Jan. 18, 1996) ("Because Boman does not deny that he used the collar as a weapon, nor does he deny (nor can he) that the collar is capable, under some circumstances, of causing death or serious injury, it was not clear error for the district court to find that the collar was a dangerous weapon."); 9th Cir. Model Crim. Jury Instr. 8.2 (Aug. 2023) ("A [specify weapon] is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury."). The Model Penal Code, too, "defines 'deadly weapon'" to mean any object "'which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.'" *United States v. Sanchez-Ruedas*, 452 F.3d 409, 414 (5th Cir. 2006) (quoting Model Penal Code § 210.0(4)). As do the Sentencing Guidelines, which define the term in part as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 n.1(E).

      Meacham's argument that a deadly or dangerous weapon must be used in a way "likely" to cause serious bodily injury would require this Court to ignore the D.C. Circuit's controlling language in *Arrington*. According to Meacham, the Court should do so because "[c]onstruing [the relevant passage in *Arrington*] to define a 'dangerous weapon' as including the use of any object that *could possibly* cause harm—no matter how unlikely the risk—ignores the context in which the D.C. Circuit explained the necessity for proof that a defendant 'actually use[d] the object in a

5

deadly [or dangerous] manner.'" ECF 44 at 3 (quoting *Arrington*, 309 F.3d at 45). But the relevant "context" is the D.C. Circuit's explanation that, to qualify as a deadly weapon, the defendant must use the object as a weapon and not for some innocuous purpose: "[F]or a car to qualify as a deadly weapon, the defendant must use it as a deadly weapon and not simply as a mode of transportation." *Arrington*, 309 F.3d at 45. Contrary to Meacham's assertion, *Arrington* did not implicitly require that a defendant use the object in a way likely to cause serious bodily injury or death. Instead, the Court simply required that the defendant use the object as a weapon, meaning that the defendant "must use it in [a] manner" "capable of causing serious bodily injury or death." *Id.* That is precisely what the Government proposed in its Trial Brief.

Meacham also incorrectly claims that other courts "require proof that a non-inherently deadly object must be used in a manner that is 'likely' to cause serious bodily injury." ECF 44 at 3. The cases cited by Meacham require no such thing. Although those cases each use the "likely to cause" language favored by Meacham, many of the same circuits have also used the "capable of causing" language adopted by the D.C. Circuit in *Arrington*. For example, although the Ninth Circuit, in *United States v. Smith*, 561 F.3d 934 (9th Cir. 2009), used the term "likely" in addition to the term "capable of," the Ninth Circuit's model jury instructions were amended in light of *Smith* to use the "capable of" formulation, and have for the last 15 years. *See* 9th Cir. Model Crim. Jury Instr. 8.2 (Aug. 2023) ("A [specify weapon] is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury."). Similarly, although the Eleventh Circuit's decision in *United States v. Guilbert* said an object is a dangerous weapon "when used in a manner likely to endanger life or inflict great bodily harm," 692 F.2d 1340, 1343 (11th Cir. 1982), the same Court in *Gumbs* approved of an instruction "that a 'motor vehicle is a deadly or dangerous

6

weapon if it is used in a way that is capable of causing death or serious bodily injury.'" 964 F.3d at 1348 (11th Cir. 2020).

Meacham also cites to *United States v. Chansley*, 525 F. Supp. 3d 151, 161-162 (D.D.C. 2021) and *United States v. Klein*, 533 F. Supp. 3d 1, 12 n.6 (D.D.C. 2021) to support his position that the Court should have used a "likelihood" rather than "capability" instruction. ECF 44 at 4. Meacham's citation to *Chansley* and *Klein* in support of a "likelihood" instruction is misleading for at least three reasons. First, it ignores that in the substance of the opinion, *Klein* cites the proper formulation of the instruction, using the "capable," not "likely," standard. *See, e.g., id.* at 10. *Klein* did not ultimately squarely address this issue, finding that it was "not necessary to decide." *Id* at 11. Second, *Klein*'s use of the term "likely" relies on the bail opinion in *Chansley*, where the issue was also not squarely presented, and which did not cite *Arrington. See id.* (quoting *Chansley*, 525 F. Supp. 3d 151); *see also Easterday*, at 11 ("The Court is not swayed by these four cases [including *Klein* and *Chansley*], however, because none engages with *Arrington*, and other cases from this district that do so engage have not used the 'likely' standard"). Moreover, Judge Lamberth, the author of *Chansley*, later adopted the *Arrington* formulation when he convicted defendant Christopher Worrell of violating Section 111(b) and 1752(b)(1)(A) for using pepper gel on January 6. *United States v. Worrell,* Case No. 21-cr-292 (RCL), ECF 245 at 7-10.

Meacham's proposed standard would also undermine Congress's intent in enacting Section 111, which was to "accord[] maximum protection to federal officers." *United States v. Feola*, 420 U.S. 671, 684 (1975). Under Meacham's approach, a defendant (1) who assaulted a federal officer with an object capable of causing death or serious bodily injury and, (2) who used the object in a way capable of causing death or serious bodily injury to the officer, nonetheless would not be guilty of violating Section 111(b) unless the assault was likely to result in those

serious consequences. Were that correct, there would be no statutory prohibition on using an object to place federal law enforcement officers at possible risk of death or serious bodily injury. A "likely" standard could also turn many Section 111(b) cases into actuarial expert battles, potentially requiring the government to prove that an attack had a 55% likelihood of causing a serious bodily injury and not, for example, a 45% likelihood. This outcome would fail to advance Congress's intent in enacting Section 111.

Indeed, the one case the government has found in which the "capable of causing" and "likely to cause" distinction made a difference to the outcome highlights the absurdity of Meacham's proposed approach. In *United States v. Olthoff*, the district court, following a bench trial, acquitted the defendant of using a deadly weapon—his car—to assault two U.S. Marshals. No. 11-CR-354 (PJS/AJB), 2012 WL 928587, at *1 (D. Minn. March 19, 2012). There, the defendant used his car to ram the Marshals' vehicles while trying to escape; in the process, he "sped onto the sidewalk, passing within 'three or four feet' of [one of the deputies] and knocking down shrubs and signs as [he] went." *Id.* at *1, *4. However, the Marshals were in "large and sturdy SUV[s,]"; the distance between the defendant's car and the Marshals' SUVs was around a foot; and the Marshal "was never in the path of the [defendant's] vehicle." *Id.* at *4. The court concluded that, "[w]ithout question, [the defendant] acted with reckless disregard for the [Marshals'] safety[.]" *Id.* at *5. "And without question, either or both deputies could have suffered serious bodily harm." *Id.* But because the court understood the Eighth Circuit to require that the defendant used his car "in a way that was '*likely* to endanger life or inflict serious bodily harm,'" *id.* (quoting *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988)), the court acquitted him of violating Section 111(b) and instead found him guilty only of a misdemeanor violation of Section 111(a). *Id.* In doing so, the court explained that "[o]ther circuits require less—and, if this

8

case were being tried in those circuits, the Court would not hesitate to convict [the defendant] of violating § 111(b)." This outcome surely does not advance Congress's goal of "according maximum protection to federal officers." *Feola*, 420 U.S. at 684. Chief Judge Boasberg made this point crystal clear when he concluded that "Arrington is binding precedent…[and]…means what it says—namely, that for purposes of Section 111(b)'s dangerous or deadly weapon element, it is enough to establish that an object was used in a manner capable of causing serious injury." *Easterday*, at 12-13.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court adopt the legal framework as proposed in the Government's Trial Brief. ECF 37 at 21-33.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Shalin Nohria*
SHALIN NOHRIA
Assistant United States Attorney
D.C. Bar No. 1644392
United States Attorney's Office
601 D St. NW
Washington, D.C.
shalin.nohria@usdoj.gov

*/s/ Benjamin J. Smith*
BENJAMIN J. SMITH
Assistant United States Attorney
N.Y. Bar Number 5220637
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 304-0977
Benjamin.smith4@usdoj.gov

9